Defendant-appellant Terrence Crockett appeals the September 18, 1998, Judgment Entry of the Stark County Court of Common Pleas overruling his Motion to Suppress. Plaintiff-Appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On June 26, 1998, the Stark County Grand Jury indicted appellant on one count of possession of cocaine in violation of R.C. 2925.11(A)[1]. The indictment alleged that appellant, on or about May 19, 1998, knowingly obtained, possessed, and/or used cocaine. At his arraignment on July 2, 1998, appellant entered a plea of not guilty to the charge contained in the indictment. Appellant, on August 4, 1998, filed a Motion to Suppress any evidence gathered directly or indirectly as a result of the search and seizure of appellant's person and/or the immediate area surrounding his person. A hearing on the Motion to Suppress was held on August 10, 1998.
The following facts were developed at the hearing. During the midnight shift on May 19, 1998, Patrolman David McElhaney was patrolling on foot in a known high drug trafficking area where he had made approximately fifty to seventy five arrests in the past. While he was walking with his partner, Patrolman McElhaney saw appellant approach a vehicle and lean towards the driver's window. A couple of minutes thereafter, both McElhaney and his partner saw appellant make contact with the driver of a second vehicle. There was no hand-to-hand transaction between appellant and the occupants of either of the vehicles. After the second vehicle drove away, appellant was observed approaching and conversing with a pedestrian who was known to Patrolman McElhaney as someone who uses crack and had been arrested for drug paraphernalia. Patrolman McElhaney testified that he did not see any hand-to-hand exchange or physical contact between the two of them.
When appellant and the pedestrian saw Patrolman McElhaney and his partner approach, the two proceeded to walk away separately. Appellant was observed walking away in "a very brisk manner." Transcript of Proceedings, at 16. After stopping appellant, the two (2) officers began to pat him down for weapons, starting with appellant's hair. Appellant was patted down because "he was acting in a manner that was consistent with either selling drugs, drug activity." Transcript of Proceedings, at 17. During the pat down, appellant fully cooperated with the officers. Although no weapons were found, Officer McElhaney testified that during the pat down, he felt "tightly wadded rocks with crack cocaine" when his hand passed over appellant's left front pants pocket. Transcript, at 18. Even though he did not know whether it was crack at the time, Patrolman McElhaney stated that the material on appellant felt like crack cocaine since "it felt like — it's just a tightly wound ball with small hard objects that crumble, rough and crumbly." Transcript of Proceedings, at 18.
Subsequently, Patrolman McElhaney removed the item from appellant's pocket and found "it to be the corner of a plastic baggie and tied with several off-white hard objects that had the feeling and consistency of crack cocaine." Transcript of Proceedings, at 19. The substance tested positive for crack cocaine.
At the conclusion of the suppresion hearing, the trial court denied appellant's Motion to Suppress on the basis of Terry v.Ohio, (1968), 392 U.S. 1. Thereafter, appellant entered a plea of no contest to the charge of possession of cocaine in violation of R.C. 2925.11 (A) and was found guilty by the trial court of such charge. Appellant was sentenced to a prison term of eight (8) months and ordered to pay a fine in the amount of $1,000.00. Such sentence was to be served consecutively with appellant's sentence in another case. Appellant's plea and sentence were memorialized in a Judgment Entry filed on August 12, 1998. On September 18, 1998, a Judgment Entry was filed memorializing the trial court's denial of appellant's Motion to Suppress.
It is from the September 18, 1998, Judgment Entry that appellant prosecutes this appeal, raising the following assignment of error:
 THE TRIAL COURT ERRED BY OVERRULING APPELLANTS MOTION TO SUPPRESS EVIDENCE AND THEREBY DEPRIVED APPELLANT OF HIS CONSTITUTIONAL RIGHTS AS GUARANTEED BY THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION FOURTEEN OF THE OHIO CONSTITUTION.
 I
In his single assignment of error, appellant contends that both the investigatory stop of appellant and the subsequent pat-down search under Terry v. Ohio (1968), 392 U.S. 1 were unconstitutional. Therefore, appellant argues, the trial court should have granted the Motion to Suppress.
There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982) 1 Ohio St.3d 19;State v. Klein (1991), 73 Ohio App.3d 486, State v. Guysinger
(1993) 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. SeeState v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v Curry
(1994), 95 Ohio App.3d 93, 96, State v. Claytor (1993), 85 Ohio App.3d 623,627, 620 N.E.2d 906, 908, and State v. Guysinger
(1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
Under Terry, supra, a law enforcement officer may initiate an investigatory stop of a person when the officer has a reasonable suspicion of criminal activity. To justify such a stop, the seizing officer must be able to point to specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant the officer's suspicion of criminal activity. Id at 20. The propriety of an investigative stop must be considered in light of the totality of the surrounding circumstances. State v. Bobo (1988), 37 Ohio St.3d 177.
Upon review of the record, we concur with the trial court's determination that the investigatory stop of appellant was constitutional. There existed specific and articulable facts in this case warranting a suspicion of criminal activity. The area where the stop occurred was a known drug area where weapons were common. Not only was appellant observed approaching the driver's side of two (2) separate vehicles shortly after midnight, but he was also seen approaching and conversing with a known drug user. When the two (2) were approached by the police officers, appellant and the other man parted and appellant briskly walked away. Based on the totality of circumstances, this court finds that the investigatory stop of appellant was proper since appellant's actions reasonably warranted the officers' suspicion of criminal activity.
In the alternative, appellant asserts that even if the investigatory stop was justified, the scope of the pat down search was beyond that permitted by Terry, supra. Under Terry,
an officer is justified in conducting a limited protective pat down search for concealed weapons when the officer reasonably concludes that "the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officers or to others." Id at 24. See also State v Evans
(1993), 67 Ohio St.3d 405. There is no legal requirement that a law enforcement officer feel "scared" by the threat of danger.Evans, 67 Ohio St.3d at 413, citing United States v. Tharpe
(1976), 536 F.2d 1098. Rather, "[e]vidence that the officer was aware of sufficient specific facts as would suggest he was in danger satisfies the test set forth in Terry, supra. Id.
Patrolman McElhaney testified that he patted appellant down because "he was acting in a manner that was consistent with either selling drugs, drug activity." Transcript, at 17. He further testified that, based upon his experience, suspects that he had arrested before in the same high drug trafficking area were frequently armed with guns, knives, or keys. Based on their safety concerns, the officers were warranted in conducting a pat down search of appellant for weapons.
Appellant further contends that the scope of the pat down search exceeded that permitted by Terry since the identity of the contraband was not immediately apparent to the officer. InMinnesota v. Dickerson (1993), 113 S.Ct. 2130, the United States Supreme Court established the "plain feel" doctrine as it relates to a Terry pat down search for officer safety. InMinnesota, the court held that police may seize contraband detected through the sense of touch during a valid, Terry pat down if its identity as contraband is immediately apparent, Id.
at 2137. If the officer conducting the search must manipulate the object to determine its identity as contraband, said search exceeds the scope of a lawful Terry search and any resulting seizure of contraband by the officer is not justified under the "plain feel doctrine." Id at 2138-9.
At the suppression hearing, Patrolman McElhaney testified, when asked if he found any material on appellant during the pat down, as follows:
 A. As I was patting him down, when I took my hand over his left front pants pocket, I felt tightly wadded rocks with crack cocaine.
Q. Now, you didn't know it was crack at the time?
A. No, but it had the feel of crack cocaine.
Q. And can you describe what that feel was?
 A. It was a tightly wound ball. When I put my hands over it, it had a rough, moving sensation inside it and it felt like — it's just a tightly wound ball with small hard objects that crumble, rough and crumbly. Transcript of Proceedings, at 18.
On cross examination by appellant's counsel, Patrolman McElhaney further testified as follows:
 Q. With your fingers through jean pants, you could determine it was crumbly material? That's your testimony?
 A. I could feel it was a tightly wound ball that had several pieces in it and they moved as I went across them. Transcript of Proceedings, at 20.
Based upon the testimony, we find that the search was within the parameters set forth in Minnesota. Unlike in Minnesota
there was no impermissible sliding, rotating or manipulation of the object in Appellant's pocket. Moreover, as evidenced by Patrolman McElhaney's testimony, the contour or mass of the cocaine seized made its incriminating character immediately apparent to him through the sense of touch. Accordingly, since both the investigatory stop of appellant and the subsequentTerry pat down were constitutional, the trial court did not err in denying the Motion to Suppress.
Appellant's single assignment of error is denied.
The judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
By Edwards, J., Wise, P.J. and Hoffman, J. concur
-------------------------
-------------------------
 ------------------------- JUDGES
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
-------------------------
-------------------------
 ------------------------- JUDGES
[1] Appellant had been bound over from the Alliance Municipal Court.